A94A0618. MALEARE et al. v. PEACHTREE CITY CHURCH OF CHRIST, INC.
(445 SE2d 321)

McMURRAY, Presiding Judge.
Cherlyn Maleare and James Maleare filed an action against Peachtree City Church of Christ, Inc. ("the church") for damages allegedly sustained after Cherlyn Maleare fell from a recreational "swing" located on the church's property. The Maleares allege that their damages are "a direct proximate result" of the church's failure to exercise "ordinary care in keeping the premises and the improvements thereto safe." The church denied the material allegations of the complaint and filed a motion for summary judgment. The undisputed evidence reveals the following:

For several years, Cherlyn Maleare and her spouse, James Maleare, were members of the church and regularly gave money in support of its operations. Cherlyn Maleare also worked at a school operated on church premises and was instrumental in acquiring addi-

tional playground equipment for the school. To this extent, Cherlyn Maleare and another school employee raised funds and borrowed money and Cherlyn Maleare was present when the church pastor, Charles Thompson, discussed installation of the equipment with recreational equipment suppliers. During these negotiations, a salesman informed the pastor that a set of existing swings on church property needed repair.[1] Cherlyn Maleare heard this warning and the salesman gave Charles Thompson a new seat for one of the swings. The pastor installed the seat and executed other repairs on the swing set.

Pursuant to express authority, Cherlyn Maleare conducted a birthday party for her child at the church on April 3, 1990. The festivities fatigued Cherlyn Maleare so she sat in the swing with the new seat and rested. James Maleare then approached his wife from behind and pushed the swing. Cherlyn Maleare arched forward and then swung back. James Maleare pushed again and, as the swing neared its apex, a clamp (securing the seat of the swing to a chain) broke and Cherlyn Maleare was ejected to the ground. She was severely injured.

The trial court granted the church's motion for summary judgment based in application of the Recreational Property Act, OCGA §§ 51-3-20 through 51-3-26. This appeal followed. *Held*:

1. " 'The purpose of the (Recreational Property Act) is to encourage property owners to make their property available to the public for recreational purposes by limiting the owners' liability. OCGA § 51-3-20. OCGA § 51-3-22 provides "an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes or to give any warning of a dangerous condition, use, structure, or activity on the premises to persons entering for recreational purposes." As a prerequisite to immunity under the (Recreational Property Act), the owner cannot charge a fee for admission to the property. OCGA § 51-3-25.' (Parenthetical citations omitted.) *Cedeno v. Lockwood, Inc.*, 250 Ga. 799, 801 (2) (301 SE2d 265) (1983). The Recreational Property Act applies to both private owners of land as well as public owners of land. *Stone Mountain Mem. Assn. v. Herrington*, 225 Ga. 746 (2) (171 SE2d 521) (1969)." *Welch v. Douglas County*, 199 Ga. App. 269 (1) (404 SE2d 450).

The circumstances in the case sub judice appear to bring the church within the protection of the Recreational Property Act. Specifically, it is undisputed that church grounds and fixtures are open to the general public; that the members of the public often use the school's playground equipment for recreation; that neither the church

---

[1] The swing set has been on the church's property for several years and is situated near a public recreational path. It is undisputed that the church has always allowed free public access to its grounds and that the school's swings have long been used by the public for recreational purposes.

nor the school prevent access to the recreational fixtures; that the church has never charged a fee for such use of its property and that the Maleares were not charged when they used the church's premises for their child's birthday party. However, the Maleares argue that these circumstances do not invoke the Recreational Property Act because they were *"paying members"* of the church and because the church never gave the public express permission to use its property. These arguments are without merit.

(a) *Fee Must Not Be Charged.* "As a prerequisite to immunity under the [Recreational Property Act], the owner cannot charge a fee for admission to the property. OCGA § 51-3-25 ([formerly] Code Ann. § 105-408)." *Cedeno v. Lockwood, Inc.,* 250 Ga. 799, 801 (2), supra. In the case sub judice, there is no indication that the Maleares regularly gave money to the church in exchange for access to church property or that the church required any sort of donation for use of church property or admission into the church. Cherlyn Maleare merely deposed that, "[a]s members of the church, we regularly paid money to the church." Moreover, Cherlyn Maleare testified (in her deposition) that the church pastor and a church elder granted permission for her to conduct a birthday party on church grounds and that no fee was required for her use of church property. These undisputed facts and the absence of evidence that the church required any person to give money to support its cause forecloses issues of fact (genuine or otherwise) regarding lack of immunity under the Recreational Property Act due to charges for admission onto church property. See *Lau's Corp. v. Haskins,* 261 Ga. 491 (405 SE2d 474).

(b) *Express Invitation or Permission Not Required.* "[A]n owner of land who either directly or indirectly invites or permits without charge any person to use the property for recreational purposes does not thereby: (1) Extend any assurance that the premises are safe for any purpose; (2) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed. . . ." OCGA § 51-3-23. The uncontradicted proof in the case sub judice reveals that the recreational equipment located on the church's property was freely and regularly used by the public and that the church did not limit public access to the recreational equipment on its property. Compare *Ga. Power Co. v. McGruder,* 229 Ga. 811, 812 (194 SE2d 440). Consequently, the absence of the church's express consent for the public to use its recreational equipment does not preclude application of the Recreational Property Act.

2. Next, the Maleares contend that the liability limitations of the Recreational Property Act do not apply because the church wilfully or wantonly failed to guard or warn against a dangerous condition.

"Nothing in [the Recreational Property Act] limits in any way any liability which otherwise exists [for] willful or malicious failure to

guard or warn against a dangerous condition, use, structure, or activity. . . ." OCGA § 51-3-25. " 'A wilful failure to guard or warn would require actual knowledge of the owner that its property is being used for recreational purposes; that a condition exists involving an unreasonable risk of death or serious bodily harm; that the condition is not apparent to those using the property; and that having this knowledge, the owner chooses not to guard or warn, in disregard of the possible consequences. This test excludes either constructive knowledge or a duty to inspect.' (Punctuation omitted.) *Georgia Marble Co. v. Warren*, 183 Ga. App. 866, 867 (1) (360 SE2d 286) (1987)." *Welch v. Douglas County*, 199 Ga. App. 269, 270 (2), supra.

In the case sub judice, there is no evidence that the church had actual knowledge of the hazard that caused Cherlyn Maleare injuries. The record only shows that the pastor of the church made repairs to the swing which broke under Cherlyn Maleare's weight and that he did so in response to a warning that the swing was in need of repair. Under these circumstances and in light of evidence that Cherlyn Maleare was aware that the swing set which caused her fall was old and in need of repairs, we cannot say that genuine issues of material fact remain with regard to the church's wilful or wanton failure to guard or warn against a dangerous condition. See *Lau's Corp. v. Haskins*, 261 Ga. 491, supra.

The trial court did not err in granting the church's motion for summary judgment.

3. In light of the holding in Divisions 1 and 2 of this opinion, it is unnecessary to address the Maleares' final enumeration.

*Judgment affirmed. Pope, C. J., concurs. Smith, J., concurs in the judgment only.*

DECIDED JUNE 6, 1994 —
RECONSIDERATION DENIED JUNE 22, 1994 — 

*Webb & Lindsey, Richard P. Lindsey*, for appellants.
*Murray & Temple, William D. Temple*, for appellee.